Howard A. PRESS, Plaintiff,

v.

FOREST LABORATORIES, INC., Hans Lowey and Bonded Laboratories, Inc., Defendants.

No. 65 Civ. 2975.

United States District Court
S. D. New York.

Nov. 8, 1968.

McGlew & Toren, New York City, for plaintiff.

Koch, Lankenau, Schwartz & Kovner, New York City, for defendants.

## MEMORANDUM OPINION UPON REARGUMENT

MOTLEY, District Judge.

This is a motion by defendants pursuant to Rule 9(m) of the General Rules of this Court for reargument of their motion for an order setting aside a default judgment entered on November 28, 1967 and granting defendants leave to answer or otherwise move with respect to the complaint. Rules 55(b), (c) and 60(b) Fed.R.Civ.P.

On April 12, 1968, defendants moved for an order setting aside the default judgment. The motion was denied after oral argument on June 6, 1968. On June 17, 1968, defendant moved for reargument. In support of that motion, on June 26, 1968, with the permission of the court, defendants filed an affidavit of the defendant Hans Lowey, who is also president of the defendants Bonded Laboratories, Inc. (hereinafter referred to as "Bonded") and Forest Laboratories, Inc. (hereinafter referred to as "Forest"), detailing the circumstances under which a default judgment was entered in this action without notice to any of the defendants. On August 19, 1968, the court granted reargument limited to a question overlooked by it on the first argument, i. e., whether, as a matter of law, the default must be vacated because plaintiff failed to notify defendants of the application to enter a default judgment. Failure to give notice had been raised by defendants in their original moving papers.

The parties were directed to and did submit briefs on the question and the

court permitted the question to be reargued. The court now sets aside its former decision and grants defendants' motion to set aside the default judgment.

The present action is the third of three actions commenced by plaintiff against defendants over a ten-year period, all involving a running dispute between the parties in regard to a claim of breach of contract, patent infringement, and patent appropriation. In all three actions, plaintiff and defendants were represented by attorneys. The earliest action, commenced in 1956 in the Supreme Court of New York, Kings County, was settled by a stipulation executed by plaintiff and defendants and their respective attorneys on May 6, 1957.

Thereafter, in 1963, plaintiff commenced the first of two actions in this court (hereinafter referred to as the "first action") alleging a patent infringement. The first action was brought solely against Forest. In the course of the litigation of the first action, plaintiff's attorney (Harry Price) and defendants' attorney (Bernard H. Goldstein) fought bitterly and as a result, plaintiff's attorney sought to amend the complaint in the first action to add as defendants, among others, Mr. Goldstein and another member of the firm of defendants' attorneys. This court, by order of Judge Tenney, denied plaintiff permission to name additional defendants. Plaintiff, blocked in his attempt to add defendants in the first action, commenced this action (hereinafter sometimes referred to as the "second action") while the first action was still pending.

In the second action, this action, plaintiff added as defendants Bonded and Hans Lowey (president of both Forest and Bonded), and, in addition, added as a defendant one of the defendants' attorneys, Mr. Goldstein. The complaint in the second action, paragraph for paragraph, contained the identical claim of patent infringement recited in the first action. In addition, it alleged causes of action against Mr. Goldstein for libel and unethical conduct. Further, the complaint in the second action contained allegations referring to the earliest action in 1956 in the Supreme Court of New York and sought to set aside the stipulation of settlement disposing of that action on the grounds of alleged misrepresentations.

The complaint in the second action was served on all defendants except Mr. Goldstein and, prior to the service of the complaint, a copy of the complaint was forwarded by plaintiff's attorney to Mr. Goldstein at his office informing him that a complaint had been filed. As a result of the allegations made by plaintiff's attorney, Mr. Goldstein went to the Grievance Committee of the Bar Association and commenced a proceeding against plaintiff's attorney, Harry Price. In the latter part of 1965, the two actions were pending in this court, as well as a proceeding in the Bar Association.

Throughout all these proceedings plaintiff's attorney recognized that defendants were represented by the same attorneys and, in fact, forwarded correspondence and papers, including notice of taking depositions and interrogatories, to defendants' attorneys.

Defendants interposed an answer and counterclaim in the first action, but did not interpose an answer or enter a written appearance in the second action; instead both plaintiff's attorney and defendants' attorney proceeded before the Grievance Committee. During the pendency of the proceedings before the Grievance Committee, the first action was called for a pre-trial conference before Judge Cooper of this court. After a hearing on January 25, 1966, at which both plaintiff's attorney and defendants' attorney were present, an order was entered by Judge Cooper on March 9, 1966, discontinuing the first action. The order recited that all claims between the parties had been settled. No further proceedings were had by either party in this action during the remainder of the

year 1966. The Bar Association proceedings continued. On December 26, 1965, during the pendency of both actions and during the pendency of the Bar Association proceedings, plaintiff's attorney wrote to defendants' attorney, Mr. Goldstein, seeking to meet with him "in an effort to discuss some way of disposing of this entire situation."

In April 1967, plaintiff's attorney filed a Notice of Discontinuance in this action but only against defendants' attorney, Mr. Goldstein. Mr. Goldstein never informed defendants that the action was dismissed only against himself but contended that he told trial counsel, Mr. March, of March, Gillette, and Wyatt. Mr. March informed defendants (who have proceeded at all times in good faith believing that they were being actively defended against plaintiff's claim) that he understood that two discontinuances had been filed and that both cases had been discontinued. It must be noted also that plaintiff's attorney, who had served notices of deposition and interrogatories in this action, took no further steps with respect to these pretrial proceedings.

On May 29, 1967, a review calendar hearing was held before Judge Sugarman. It is not clear what notice, if any, defendants received of this hearing. It appears that they received none since they had not entered any formal appearance and had not filed any responsive pleading. In any event, all defendants failed to answer the review calendar call. Judge Sugarman advised plaintiff, who at that time appeared *pro se* in this action, that he was entitled to a default judgment and explained to him the steps he had to take to obtain entry of such judgment. Plaintiff's attorney withdrew as counsel on November 20, 1967, and plaintiff, a layman, thereafter proceeded in this action as attorney *pro se*. Plaintiff, with the advice of the Clerk of the Court, prepared the papers for the default judgment. According to plaintiff's statement, the Clerk advised him

that he was not legally bound to serve copies of the proposed default judgment on defendants since they had made no formal appearance in the action. The default judgment was entered on November 28, 1967, by Judge Mansfield, in accordance with the Rules of this Court, without prior notice to defendants or to defendants' attorneys. Plaintiff thereafter directed a notice of inquest and a copy of the default judgment to defendants at an address set forth in the complaint, 834 Sterling Place, Brooklyn, New York, which defendants had vacated in December, 1964, almost a year before the second action was commenced and about three and one half years prior to the date of the inquest. As a result, defendants did not learn of the default judgment until defendant Hans Lowey was served with a notice of inquest at his home in Mamaroneck in the last week in March, 1968, four months after the default judgment had been entered.

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that judgment by default may be entered by the court with the following proviso:

> If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representation, his representative) shall be served with written notice of the application for the judgment at least 3 days prior to the hearing on such application.

The question here is whether defendants or their representative had appeared in the action and were, therefore, entitled to notice prior to the entry of the default judgment. The court holds that the contacts in this case between plaintiff's attorney and defendants' attorneys were sufficient to constitute an appearance in the action and defendants therefore were entitled to notice of the application for the default judgment prior to its entry.

The 1963 and 1965 actions are really one and the same. It is now clear from the papers on this reargument and the

oral argument that plaintiff and defendant Lowey have had a running dispute for many years growing out of a joint venture or joint activity of some kind relating to a patent. Since plaintiff was unsuccessful in amending his complaint in the first action, he instituted a second action involving the same claim. Defendant Lowey, who is president of both of the defendant corporations and who had been a defendant in the 1956 action, had clearly made a formal appearance in the 1956 action in the state court and in the first action in this court. When the second action was filed against Lowey and the other defendants, it is clear that plaintiff knew that defendant Lowey and the other defendants were represented by the same counsel who appeared in the prior actions. Moreover, it is undisputed that plaintiff's attorney wrote defendants' attorney regarding settlement of the entire matter and served on them notices of taking depositions and interrogatories.

In Hutton v. Fisher, 359 F.2d 913 (3rd Cir. 1966), plaintiff's senior counsel had acquiesced in the request of defendants' counsel for more time to answer. Two months later plaintiff's junior counsel, ignorant of this acquiescence, obtained an order of default without notice to defendants' counsel. The court there held that defendants were entitled to have the default set aside almost three years later because of the improper procedure.

In Dalminter, Inc. v. Jessie Edwards, Inc., 27 F.R.D. 491 (S.D.Tex., 1961), the court held that defendant's letter mailed to plaintiff's counsel in answer to a summons requiring defendant to serve upon plaintiff's counsel an answer constituted an appearance. In the instant case, the contact between attorneys involved far more than a letter. These contacts were sufficient to constitute an appearance within the meaning of Rule 55(b) (2).

█ Where notice of a motion for a default judgment is required, but not given, such a judgment entered without notice must be vacated as a matter of law. Hutton v. Fisher, supra; Wilver v. Fisher, 387 F.2d 66 (10th Cir. 1967); Swallow v. United States, 380 F.2d 710 (10th Cir. 1967); Dalminter v. Jessie Edwards, Inc., supra. Accordingly, the default judgment herein is vacated, and defendants are given ten business days from the date of this opinion to file an answer to the complaint.